# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

| | | |
|---|---|---|
| LYNDI BLAIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C/A No. 1:18-CV-302 |
| | ) | |
| AMERICA'S HOME PLACE, INC., | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT AMERICA'S HOME PLACE, INC.'S MOTION FOR SUMMARY JUDGMENT

___

Gregory J. Hare
Georgia Bar No. 326020
Jeffrey J. Costolnick (Pro Hac Vice)
Georgia Bar No. 637168

OGLETREE DEAKINS NASH
  SMOAK & STEWART, P.C.
One Ninety One Peachtree Tower
191 Peachtree Street, N.E., Suite 4800
Atlanta, Georgia 30303
Telephone: (404) 881-1300
greg.hare@ogletreedeakins.com
jeffrey.costolnick@ogletreedeakins.com

*Attorneys for Defendant America's Home Place, Inc.*

Case 1:18-cv-00302-RLJ-SKL Document 29-1 Filed 08/27/20 Page 1 of 26 PageID #: 168

# I.     INTRODUCTION

This is an employment discrimination case, in which Plaintiff Lyndi Blair ("Plaintiff" or "Ms. Blair") alleges that America's Home Place ("AHP") discriminated against her on the basis of her sex and age, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Tennessee Human Rights Act ("THRA"), and the Age Discrimination in Employment Act of 1967 ("ADEA)," and paid her less than a male coworker, in violation of the Equal Pay Act of 1963, as amended ("EPA"). Specifically, during the time in question, July 2017, Ms. Blair was employed in a sales role for AHP, as a "building consultant."[1] Her allegations center exclusively on her discontent with AHP's hiring of another sales employee (Jim Blankenship) in the Chattanooga office and giving him the title of "sales manager." This personnel transaction had nothing do with Ms. Blair, and did not affect her position in any way. Moreover, Ms. Blair never sought the position or title of sales manager.

AHP was not looking to add a sales manager in the Chattanooga office at any point in 2017, or since. Mr. Blankenship, however, was a rare opportunity prospect who possessed a certain unique skillset – he was a top performer in sales production with a key competitor of AHP, in a niche business area – and he came highly recommended by another AHP employee. When Mr. Blankenship came to AHP's attention as a potential high-value prospect, AHP recruited Mr. Blankenship to join its sales team. As part of AHP's efforts to entice Mr. Blankenship to accept its offer of employment and to relocate his family from another state, AHP agreed to give him the title he requested, sales manager. Contrary to the presumptuous allegations in Ms. Blair's Complaint, AHP did not create a sales manager position and then hire

---

[1] Ms. Blair's employment with AHP ended in January 2019 for unrelated reasons, after this lawsuit commenced.

Case 1:18-cv-00302-RLJ-SKL   Document 29-1   Filed 03/20/20   Page 2 of 26   PageID #: 615
Case 1:18-cv-00302-RLJ-SKL   Document 29-1   Filed 03/20/20   Page 2 of 26   PageID #: 169

Mr. Blankenship; rather, AHP hired Mr. Blankenship . . . and created a sales manager title for him, as he demanded as a condition of joining AHP from a competitor.

Importantly, though, Mr. Blankenship was sales manager in name only. The terms of his Employment Agreement provide that, following a brief non-commission based transition period (similar to what Ms. Blair received when she was first hired), Mr. Blankenship shall be paid "according to standard compensation terms for the Building Consultant Position," exactly like Ms. Blair. Furthermore, Mr. Blankenship carried the same job duties as Ms. Blair and he never earned any commission based on Ms. Blair's production; *i.e.,* he was not her superior for compensation purposes and he was not compensated based on her production.

In summary, Mr. Blankenship was given the title of sales manager because he asked for it when negotiating his job offer, and AHP was willing to agree to that unique term to entice him to leave a competitor, relocate his family from another state, and join its sales team. There was no vacancy AHP was trying to fill. Mr. Blankenship was not chosen over Ms. Blair, and his hire had absolutely nothing to do with her. For the reasons discussed below, Ms. Blair cannot establish a *prima facie* case of discrimination or equal pay violations on the record evidence in this case. Even if she could possibly establish a *prima facie* case, her claims still fail as a matter of law because she cannot show that AHP's legitimate, non-discriminatory reason for hiring Mr. Blankenship was a pretext for unlawful discrimination or retaliation. As such, AHP is entitled to summary judgment on all Counts.

## II.  SUMMARY OF UNDISPUTED MATERIAL FACTS

### A.  AHP

AHP is a scattered-lot home builder that specializes in On-Your-Lot custom home building, based on AHP's various home designs and plans.  (Stacy Buchanan Declaration ("Buchanan Dec."), ¶7).  AHP is an Equal Opportunity Employer with a policy mandating fair and equal treatment of all of its employees regardless of their age, sex, religion, race, creed, color, ancestry, disability, national origin, or non-job related disability.  (*Id.* ¶8; Lyndi Blair Deposition, Exh. 3). Ms. Blair received, understood, and agreed to these policies when she was hired (and she had access to all versions of the Policy on the Company intranet).  (Blair Dep., 118:4-15 and 121:16, Exh. 2).

### B.  MS. BLAIR'S EMPLOYMENT

AHP hired Ms. Blair in July of 2005 as a Building Consultant in its Chattanooga office, currently located at 2265 Gunbarrel Rd., Suite A, Chattanooga, Tennessee 37421.  (Buchanan Dec., ¶9; Blair Dep., 57:8-13).   Building Consultants at AHP are sales representatives. (Buchanan Dec., ¶11; Blair Dep., 58:23-24).  Their primary duties are to pursue and cultivate sales leads in AHP's database (gathered primarily through online activity on AHP's website) by calling, emailing, and otherwise communicating with potential customers to answer questions, schedule and conduct sales appointments, assist with home amenity selections, and to sell homes. (Buchanan Dec., ¶12).

Initially, Ms. Blair served as Building Consultant for only a brief period after she was hired.  (*Id.* ¶13).   By September of 2006, she voluntarily asked to step back from the commission-based selling and production role, into an hourly-based non-production Office

Assistant role.  (*Id*. ¶14).  She subsequently worked as a Production Coordinator, until moving into the role of Sales Administrator, in August 2013, where she assisted the sales team with administrative matters. (*Id*. ¶15). Ultimately, in August of 2016, Ms. Blair asked for another chance at sales.  (*Id*. ¶16).  AHP assented to her request and promoted her back to Building Consultant, effective September 5, 2016.  (*Id*.)

## C.    COMPENSATION STRUCTURE FOR AHP SALES PERSONNEL

Every AHP sales employee (regardless of sex, age, or any other protected classification) has the choice of two established compensation plans, either: (1) a "base plus commission" plan, whereby the employee is paid a base salary of $30,000 plus $1,500 commission per sale closed; or (2) a "commission only" plan, whereby the employee is paid $2,500 per sale closed straight commission with no base salary, plus $500 upon completion of the home.  (*Id*. ¶17; *see also* Blair Dep., 105:5-10).  As a Building Consultant, Ms. Blair opted for the first compensation plan. (Buchanan Dec., ¶18).  Accordingly, as a commissioned employee, her compensation directly corresponded to her production/sales performance.  (*Id*. ¶19; Blair Dep., 155:1-14, 228:8-11).

Notwithstanding the above, AHP also recognizes that when new sales employees are brought in from outside of the Company and from other regions, it often takes some time to build a lead base and to start earning reasonable commissions.  (Buchanan Dec., ¶20).  Therefore, in a well-established practice, to attract new sales candidates and to prevent the cannibalizing of existing leads from other AHP sales employees in those same areas, AHP offers sales employees newly-hired to an office the option for a temporary, fixed pay base salary (without commission) during the first 13 pay periods of the new sales role, to allow them to concentrate on getting

settled in their new positions and establishing a working lead base. (*Id.*) When Ms. Blair was first hired as a Building Consultant, she received the same consideration "[w]hile [she] built up [her] pipeline to generate commissions," and she confirmed it was helpful for her transition. (*Id.* ¶21; Blair Dep., 107:23-108:11; 189:5-7). During that temporary, introductory fixed-salary period, sales employees are not entitled to any commissions. (Buchanan Dec., ¶22).

### D.  MR. BLANKENSHIP'S EMPLOYMENT AND COMPENSATION

In June of 2017, AHP hired Jim Blankenship away from one of AHP's chief competitors, Schumacher Homes ("Schumacher"). (*Id.* ¶23). Similar to AHP, Schumacher builds scattered-lot homes. (*Id.* ¶24). This is a unique market with a small sub-set of competing companies in a very different business from tract-lot mass-production home building. (*Id.* ¶25). Sales production experience in this unique field is rare and, without that experience, the learning curve tends to be very long (and often unsuccessful). (*Id.* ¶26). Therefore, when a proven producer from Schumacher – with industry specific knowledge and experience – becomes available, AHP views that as a rare and high-potential employment opportunity. (*Id.* ¶27). That was particularly the case with Mr. Blankenship. (*Id.* ¶28).

Prior to hiring Mr. Blankenship, AHP knew that Mr. Blankenship was a proven "Top 10" sales performer at Schumacher. (*Id.* ¶29; Blair Dep., 208:8). A respected AHP employee, Chris Willee, who had previously worked with Mr. Blankenship at Schumacher, vouched for Mr. Blankenship's sales expertise and success. (Buchanan Dec., ¶30). Based on these impressive credentials, AHP sought to recruit Mr. Blankenship to enhance its salesforce. (*Id.* ¶31; Blair Dep., 209:11-17).

When AHP began speaking with Mr. Blankenship in an effort to recruit him to AHP's sales team, Mr. Blankenship requested the title of sales manager. (Buchanan Dec., ¶34). At that time, there was not a sales manager position in the Chattanooga office, and that was not a position that AHP was looking to fill. (*Id*. ¶35; Blair Dep., 220:7). In fact, the Chattanooga office had not employed a sales manager for many years, dating back to 2014. (Buchanan Dec., ¶36). In order to entice Mr. Blankenship to move to AHP, the Company acquiesced to his demand for the job title of sales manager. (*Id*. ¶37). Mr. Blankenship was not chosen for the sales manager position "over" Ms. Blair, or anyone else for that matter. (*Id*. ¶38). Rather, AHP resurrected the title uniquely for Mr. Blankenship in order to lure him from a competitor. (*Id*.)

Ms. Blair, on the other hand, never asked for a sales manager title (*id*. ¶39; Blair Dep., 220:11-23) and, according to Ms. Blair, people are not just given a job at AHP without requesting or applying for it. (Blair Dep., 60:7-11; *see also* 66:5-12). Indeed, during Ms. Blair's entire career with AHP, "[t]here was never a position that came open that [she] applied for that [she] did not get." (*Id*., 115:18-19). Before Ms. Blair first obtained the position of Building Consultant, she approached her supervisor "and said I would like to apply for the building consultant position." (*Id*., 137:2-5). Additionally, other than during the national economic "'08 implosion," Ms. Blair was never denied a pay raise that she requested from AHP. (*Id*., 116:1 and 117:11).

Every new hire at AHP must be approved by, at least, the Regional President, Division President, and office General Manager, before being submitted to corporate for final approval. (Buchanan Dec., ¶40). Accordingly, the decision to hire Mr. Blankenship was made by AHP's Regional President, Stacy Buchanan; Division President, Craig Stephens; and Chattanooga office

General Manager, Cole Poorman. (*Id*. ¶41; *see also* Blair Dep., 204:19-205:4, 219:11 (Mr. Blankenship would have been "vetted" through a multi-level hiring process involving corporate personnel)).

Mr. Blankenship's hire did not affect Ms. Blair's compensation or role with AHP in any way. (Buchanan Dec., ¶42; Blair Dep., 116:1 and 117:11). Her job title was unchanged, she maintained the same duties and pay, and she continued "wearing all the hats [she] was wearing" before his hire. (Buchanan Dec., ¶42; Blair Dep., 227:12-20). Despite receiving the title of sales manager, Mr. Blankenship had no supervisory duties over Ms. Blair, and he was not "managing her" in any way. (Blair Dep., 113:19-21 and 115:2-3). They performed the same job duties. (*Id*., 218:22-23, 230:17-20). According to Ms. Blair, "he did his thing. I did my thing." (*Id*., 115:2-3).

Furthermore, Mr. Blankenship received no superior compensation as compared to any other Building Consultant at AHP, including Ms. Blair. (Buchanan Dec., ¶43). His Employment Agreement expressly provided that he shall "be paid according to standard compensation terms for the Building Consultant Position." (*Id*., and Ex. 2). Because Mr. Blankenship was hired from outside of the Company, however, and was coming into a new region – similar to what Ms. Blair received when she was first hired by AHP – Mr. Blankenship was offered a temporary transition base-salary, as described above, at a rate of $3,846.15 for the first 13 pay periods of his employment, with no production or sales-related commissions. (*Id*. ¶44, and Ex. 2; Blair Dep., 255:25, 309:17-21, and Exh. 11). At the conclusion of his temporary transition period, Mr. Blankenship was subject to the same standard Building Consultant commission-based compensation terms. (*Id*.) Thus, whether Mr. Blankenship was hired with the title of sales

manager or Building Consultant made absolutely no difference in terms of his compensation plan. (Buchanan Dec., ¶45).

In her Complaint, Plaintiff erroneously claims that Mr. Blankenship was paid a base salary of "$50,000 for at least six month . . . plus $2,000 commission per home." (*See* Compl., ¶10). Her solitary support for this claim is a *draft* Request for Personnel Action Form that she stole (along with other confidential documents) from AHP's confidential personnel files and attached as "Exhibit B" to the Complaint. (*See id*., Ex. B; *see also* Blair Dep., 258:1-9).[2] Ms. Blair has no other evidence to support this claim regarding Mr. Blankenship's pay. (Blair Dep., 248:13-249:9).

As Ms. Blair knows, an employee must sign a Personnel Action Form for it to become effective. (*Id*., 76:10; Buchanan Dec., ¶47). Exhibit B to the Complaint was never fully approved by AHP corporate, nor presented to or signed by Mr. Blankenship, nor implemented or activated as payment terms through AHP's employee payroll system. (Buchanan Dec., ¶46; Blair Dep., 249:25). Ms. Blair admittedly has no knowledge as to whether this document was ever finalized or put into effect. (Blair Dep., 250:4-6). Had Ms. Blair bothered to ask AHP about this draft document, she would have learned that Exhibit B, which is dated June 8, 2017, is a draft document that was never finalized, approved, or placed into effect. (Buchanan Dec., ¶48). It was prepared informally, and confidentially, during internal discussions concerning Mr. Blankenship, but was never fully approved nor presented to Mr. Blankenship, and never went into effect. (*Id*. ¶49). The Request for Personnel Action Form which was finalized and presented to Mr. Blankenship for signature, and ultimately signed by Mr. Blankenship and

---

[2] Despite attaching this stolen document to her Complaint, Plaintiff falsely testified that she did not take any AHP property or documents. (Blair Dep., 85:20-25).

placed into effect, is a June 22, 2017 document that unequivocally states Mr. Blankenship's compensation during his temporary transition period would be "$3,846.15 For 13 Pay Periods. Guaranteed," and nothing else – consistent with the terms of his Employment Agreement. (*Id*. ¶51, and Ex. 3; Blair Dep., 309:17-18).

**E.      THIS LAWSUIT**

In summary, Ms. Blair's position with the Company was not changed in any way by Mr. Blankenship's hire.  She was "very upset" when Mr. Blankenship was hired because she felt slighted.  (*See* Blair Dep., 86:16-18).  Nevertheless, on or about November 7, 2018 she filed this lawsuit against AHP and the basis of her lawsuit is that: "they brought in a sales manager and [Ms. Blair] was not even offered the position . . . ."  (*See id*., 123:4-6).

This is not evidence of discrimination.  Evidently aware of this glaring deficiency with her claims, Ms. Blair contends that she was discriminated against because when Mr. Blankenship was hired, Mr. Stephens allegedly "described him as a younger male" and asked if Ms. Blair was planning on retiring.  (*See* Blair Dep., 198:16, 200:1, 203:4).  Mr. Stephens expressly denies calling Mr. Blankenship a younger male (Craig Stephens Declaration, ¶7), and Ms. Blair does not allege any other basis upon which Mr. Stephens allegedly discriminated against her.  (*See* Blair Dep., 216:3-7).  Moreover, even if Mr. Stephens did describe Mr. Blankenship as a younger male, Ms. Blair does not know whether Mr. Stephens stated that Mr. Blankenship was hired "because" he was a younger male.  (*Id*., 212:20-213:1) ("I don't know if he put the word <u>because</u> in there or not").

Case 1:18-cv-00902-RLJ-SKL Document 29 Filed 02/08/20 Page 10 of 26 PageID #: 623

Case 1:18-cv-00902-RLJ-SKL Document 29 Filed 03/20/20 Page 10 of 26 PageID #: 177

### III.    STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material and must be facts that, under the substantive law governing the issue, could affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  The mere existence of a "scintilla" of evidence in support of the non-moving party is not sufficient to preclude summary judgment.  *Id.*  "There must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."  *Id.*

In order to defeat a motion for summary judgment, Plaintiff cannot rely on speculation, but must go beyond the pleadings and present evidence on each element of her case showing that there is a genuine issue of fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  Once a defendant moves for summary judgment, the plaintiff may not rest on conclusory allegations or denials in the pleadings, or rumors, speculation or subjective beliefs.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Mitchell v. Toledo Hospital*, 964 F.3d 577, 585 (6th Cir. 1992).  Neither the mere existence of some alleged factual dispute nor the existence of "some metaphysical doubt as to the material facts" is sufficient to avoid summary judgment. *Matsushita*, 475 U.S. at 586.  Rather, a plaintiff must tender cold, hard facts that establish a necessary and genuine issue for trial.  *Id.*  "A complete failure of proof on an essential element of

-10-

Case 1:18-cv-00902-RLJ-SKL  Document 29-1  Filed 03/20/20  Page 11 of 26  PageID #: 624
Case 1:18-cv-00902-RLJ-SKL  Document 29-1  Filed 03/20/20  Page 11 of 26  PageID #:
178

the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 317. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. ARGUMENT & CITATION OF AUTHORITY

### A. Plaintiff's Gender-Based Discrimination Claim Fails As A Matter Of Law.

To establish a disparate treatment discrimination claim, Plaintiff must support her allegations with either direct evidence of discrimination or through circumstantial evidence that would support an inference of discrimination. *Bryant v. Rolling Hills Hosp., LLC*, 836 F. Supp. 2d 591, 605 (M.D. Tenn. 2011) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000)). Direct evidence is evidence which, if believed, would prove the existence of discrimination without inference or presumption. *Id.* Here, Plaintiff offers no direct evidence of discrimination. She admits that prior to hiring Mr. Blankenship, nobody at AHP ever made a comment about her age or gender. (Blair Dep., 207:11-17). Ms. Blair did not know whether Mr. Stephens stated that Mr. Blankenship was hired "because" he was younger or a male. (*Id.*, 212:20-213:1). Ms. Blair does not allege that anyone else at AHP ever made a comment about Mr. Blankenship's age or gender (*id.*, 217:16-22), and she cannot identify any other witnesses or documents to support her gender-based discrimination claims. (*Id.*, 217:23-218:1).

Absent direct evidence of discrimination, courts must determine whether the plaintiff can establish a cause of action through circumstantial evidence, utilizing the familiar burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S.

-11-

Case 1:18-cv-00902-RLJ-SKL Document 29-1 Filed 03/20/20 Page 12 of 26 PageID #: 179

792, 93 S. Ct. 1817 (1973). *Bryant*, 836 F. Supp. 2d at 606. Despite this burden-shifting framework, the ultimate burden of persuading the trier of fact that AHP intentionally discriminated against Plaintiff remains at all times with Plaintiff. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). On the undisputed record, Plaintiff cannot meet her burden of proof.[3]

To establish a *prima facie* case of gender-based discrimination, a plaintiff must show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably. *See Novotny v. Elsevier*, 291 F. App'x 698, 702 (6th Cir. 2008) (unreported) (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)). Alternatively, to establish a *prima facie* case of discrimination based on an alleged failure to promote, a plaintiff must demonstrate that (1) she is a member of a protected group; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). Here, Ms. Blair cannot establish a *prima facie* case of gender-based discrimination under either test.

---

[3] Although Ms. Blair alleges claims under Title VII and THRA, the Court need only conduct a single analysis because the standard is the same under both. See *Bryant*, 836 F. Supp. 2d at 605, n.13 (citing Tenn. Code Ann. 4-21-311(e) (2011) (providing that THRA claims filed after June 2011 are governed by the *McDonnell Douglas* burden-shifting framework)).

-12-

Ms. Blair cannot establish the second or fourth elements of a *prima facie* case of discrimination because she was not replaced and cannot offer any evidence that a male AHP employee was given preferential treatment under similar circumstances. Based on Ms. Blair's own testimony, the hiring of Mr. Blankenship had absolutely no impact on her role with the Company because Mr. Blankenship did not replace Ms. Blair and when he was hired, Ms. Blair's job title, duties, and compensation all remained the same. (Blair Dep., 227:12-20; *see also* Buchanan Dec., ¶¶42-43).

To the extent Ms. Blair claims she was subjected to an adverse action because AHP did not offer her the position of sales manager, her claim fails for two reasons. First, Plaintiff cannot establish that AHP failed to promote her because she cannot demonstrate any difference between her position and that of Mr. Blankenship, other than name only. (Blair Dep., 218:22-23 ("[h]e was doing the same thing I was doing"), 230:17-20 ("I don't know what a sales manager's job duties would be. I do know all Jim was doing was trying to sell houses just like I was.")).

Second, Plaintiff cannot offer any evidence that she ever applied for and/or was considered for a sales manager title or position. Generally, "a plaintiff bringing a failure-to-promote . . . claim must establish that he applied for the position in question." *Johnson v. Cargill, Inc.*, 932 F. Supp. 2d 872, 887–88 (W.D. Tenn. 2013); *see also Wanger v. G.A. Gray Co.*, 872 F.2d 142, 147 (6th Cir. 1989) (the application requirement "is grounded in common sense. For if an application were not necessary, then nearly every decision to hire or promote would be subject to challenge'"). A plaintiff cannot establish she was subject to an adverse decision unless she makes her desire for the position known to the employer. Indeed, according

to Ms. Blair, people at AHP are not just given a job without first applying for it.  (Blair Dep., 66:5-12).

While there may be a limited exception to the application requirement in failure to promote cases where the plaintiff is not aware of the open position,[4] that is not the case here. First, "sales manager" was not an "open position" that AHP actively was trying to fill. (Buchanan Dec. ¶35).  AHP sought only to bring on a second salesperson (with the same pay structure and duties) to assist Ms. Blair with sales.  (*See id.* ¶¶31-32).  Mr. Blankenship simply requested a different title during those on-boarding negotiations.  (*Id.* ¶34).

Second, unlike Mr. Blankenship, Ms. Blair never requested a sales manager title, nor expressed to AHP any interest in the title, despite being aware of it.  (*Id.* ¶39; Blair Dep., 220:11-23).  Ms. Blair was aware that Building Consultants could obtain the title of sales manager – even at times where there are no other sales employees in the office – because she had discussed this fact with her predecessor when he did exactly that.  (Blair Dep., 111:15-23).  In *Donahoo v. Ohio Dep't of Youth Servs.*, an Ohio district court held that the application exception in *Dews* does not apply where the plaintiff was aware of the employment opportunities and had notice of the position, and did not express interest in the position.  237 F. Supp. 2d 844, 863–64 (N.D. Ohio 2002).  To the contrary, Ms. Blair confirmed that during her entire career with AHP she received every position she ever applied for.  (Blair Dep. 115:18-19).  Additionally, other than during an economic turndown in 2008, she received every pay raise she requested from AHP. (*Id.* 117:11).

---

[4] *See, e.g.*, *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000).

On the other hand, if what Plaintiff contends is that Mr. Blankenship allegedly took over some of her sales-related responsibilities once he joined AHP, in addition to his own, "[s]uch an act does not constitute replacement." *Novotny*, 291 F. App'x at 702. The Sixth Circuit has clearly established that "[a] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties . . . A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Id.* (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). In this case, Mr. Blankenship was hired to supplement the sales force in the Chattanooga office. (Buchanan Dec., ¶31). He had his own separate duties, and Ms. Blair continued in her exact same role as Building Consultant, in her own words – "wearing all the [same] hats." (*Id.* 42; Blair Dep., 227:12-20).

While Ms. Blair alleges in her Complaint that "Mr. Blankenship was to receive half of her leads," in reality, she has fully admitted that every lead belongs to the Company. (Blair Dep., 241:7-8 ("all leads belong to the company. They don't belong to me")). The Company's leads are automatically distributed evenly among all sales personnel in an office. (Buchanan Dec., ¶33; Blair Dep., 232:14). When Mr. Blankenship was hired, the Chattanooga office had enough leads to support a second salesperson; and, as a salesperson, Mr. Blankenship was expected to assist in working the Company leads to generate sales. *(*Buchanan Dec. ¶32). Mr. Blankenship did not take over any leads that Ms. Blair was actively working or which were known to be "flagged" by Ms. Blair. (Blair Dep., 238:15). Rather, according to Ms. Blair, of the hundreds of prospect leads in the system, Mr. Blankenship accidentally assisted two customers that Ms. Blair may have previously communicated with – neither of whom Ms. Blair can identify by name. (*Id.*, 233:10-24)). No evidence shows that those two leads were taken from Ms. Blair

and given to Mr. Blankenship in a manner that affected any sales by (or compensation to) Ms. Blair.

With respect to the first alleged lead/customer, Ms. Blair stated that she was not at work when the customer walked into the store, so Mr. Blankenship, being the only salesperson present, introduced himself and began assisting the customer. (*Id.*, 235:3-23). Notably, that prospect did not result in a sale for AHP because the Company was unable to provide the particular services they sought. (*Id.*, 236:2-6).

With respect to the second lead/customer, Ms. Blair confirmed that she had neither flagged that lead nor even spoken with them in years. (*Id.*, 239:1-240:21). When that prospect arrived at AHP, again, Mr. Blankenship happened to greet the customer at the door, and Ms. Blair did not pursue a conversation or even say anything about the customer reportedly being her lead, because she did not want to "make waves." (*Id.*) Ms. Blair can identify no other instances where Mr. Blankenship allegedly "received" one of her flagged leads. (*Id.*, 240:21).

Ms. Blair was not subject to an adverse employment action, replaced, or treated less favorably than a similarly situated male employee. Because Plaintiff cannot establish the elements of a *prima facie* case of gender-based discrimination, her claim fails as a matter of law.

### B. Plaintiff's Age-Based Discrimination Claim Fails As A Matter Of Law.

For similar reasons, Ms. Blair cannot establish a claim of discrimination based upon her age. To establish a *prima facie* case of age-based discrimination under the ADEA, Plaintiff must present evidence that she: (1) is at least 40 years old, (2) suffered an adverse employment action, (3) was qualified for the position and meeting her employer's legitimate expectations, and (4) was replaced by someone substantially younger. *See O'Connor v. Consol. Coin Caterers*

-16-

Case 1:18-cv-00902-RLJ-SKL Document 29-1 Filed 03/20/20 Page 17 of 26 PageID #: 184

*Corp.*, 517 U.S. 308, 310 (1996); *Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 487 (6th Cir. 2012) (unreported) (citing *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008)). Even though Mr. Blankenship fell barely outside the protected age class at the time of his hire (age 39), Ms. Blair cannot support a *prima facie* age case.

As discussed immediately above, Ms. Blair was not subjected to any kind of adverse employment decision and she was not replaced. Furthermore, Ms. Blair cannot establish any differences between her position and the sales manager position. (*See* Blair Dep., 218:22-23, and 230:17-20). Mr. Blankenship performed the same job alongside Ms. Blair, he was not managing her in any way, and he received no superior compensation as compared to Ms. Blair. (*See id.*, 113:19-21, 115:2-3, 218:22-23, 230:17-20, and 115:2-3; *see also* Buchanan Dec., ¶43). Additionally, there is no evidence that Ms. Blair ever sought the title of sales manager. (*See* Buchanan Dec., ¶39; Blair Dep., 220:11-23). As such, her complaint of disparate age-based treatment is entirely unsupported by the record.

### C. Plaintiff Cannot Establish that AHP's Legitimate, Non-Discriminatory Reason for Hiring Mr. Blankenship Was a Pretext for Unlawful Discrimination.

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of gender-based or age-based discrimination, Plaintiff cannot establish that AHP's legitimate, non-discriminatory reason for hiring Mr. Blankenship was pretextual. To demonstrate pretext, a plaintiff must produce sufficient evidence from which a jury could reasonably find the employer's explanation for the adverse employment action "had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 268

-17-

(6th Cir. 2010). In other words, Ms. Blair must produce evidence to demonstrate that AHP's explanation is so weak, implausible, or contradictory that a reasonable fact-finder would find it "unworthy of credence." *Burdine*, 450 U.S. at 256; *see also Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996). Here, Plaintiff simply cannot do so.

Uncontroverted record evidence shows that AHP's decision to hire Mr. Blankenship as sales manager had absolutely nothing to do with Ms. Blair, and was based entirely upon legitimate, nondiscriminatory business competition reasons. Given Mr. Blankenship's prior experience in this niche scattered-lot home business, he had considerable industry knowledge that AHP wanted to take away from a key competitor, Schumacher. (Buchanan Dec., ¶28). Moreover, he was a proven Top 10 performer in his prior sales role with a direct competitor, with a trusted AHP employee vouching for his prior success and portable skill set. (*Id*. ¶¶29-30). As such, Mr. Blankenship was viewed as a rare opportunity hire and a highly beneficial addition to the AHP sales force. (*Id*. ¶28). Obtaining "insider" insights regarding the tactics of a direct competitor also was attractive to AHP. (*Id*.).

AHP shared this information with Ms. Blair when Mr. Blankenship was hired, telling her he was one of the top salespeople at Schumacher. (Blair Dep., 208:7-8, 210:20). Even Ms. Blair believed that Mr. Blankenship was "making amazing money" in sales for his former employer (*id*., 210:3-9)), and she testified that the reason Mr. Blankenship was hired is because Mr. Stephens "wanted to be number one in the company [in sales] and he thought this would be his way to become number one." (*Id*., 209:11-17).[5] In other words, AHP made a business decision to recruit Mr. Blankenship to enhance the success of AHP's sales team, and that

---

[5] According to Ms. Blair, Mr. Blankenship was part of a "package-deal," along with the hiring of Mr. Willee from Schumacher Homes as well. (*Id*., 209:19).

decision was wholly unrelated to race, gender, or even any existing personnel in the Chattanooga office. (Buchanan Dec. ¶57). To entice Mr. Blankenship to accept AHP's offer of employment and relocate his family, AHP agreed to resurrect the title of sales manager. (*Id*. ¶38). This clearly was a legitimate, nondiscriminatory business decision that had nothing to do with Ms. Blair – and had no impact whatsoever on Ms. Blair's position. (*See id*. ¶¶42 and 57-59).

Plaintiff cannot offer a scintilla of evidence from which a fact-finder could conclude that AHP's stated reason for hiring Mr. Blankenship and giving him the title of sales manager was pretextual or discriminatory against her. On the other hand, it is clear that AHP does not discriminate based on age or gender when selecting salespersons for the Chattanooga office. After all, the current building consultant in that office is a female aged 52. (*See id*. ¶60).

Therefore, Plaintiff cannot establish a claim of discrimination under Title VII, the THRA, or the ADEA.

### D. Plaintiff's EPA Claim Fails As a Matter of Law.

To establish a *prima facie* case of employment discrimination under the EPA, a plaintiff must show that employees of the opposite sex were paid different wages for equal work, requiring equal skill, effort, and responsibility, and performed under similar working conditions. *See Buntin v. Breathitt Cty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223, 2228 (1974)). Plaintiff's own argument in support of her discrimination claims directly contradicts her ability to establish the "equal work" element of a *prima facie* EPA claim. In claiming discrimination, Ms. Blair necessarily contends that she was not offered a *more senior* position (i.e., sales manager). (*See* Blair Dep., 123:4-6). If the sales manager position was a more senior position, then

Mr. Blankenship was not performing "equal work, requiring equal skill, effort, and responsibility . . . under similar working conditions."

Moreover, the record evidence establishes that Mr. Blankenship was subject to the same compensation structure that Ms. Blair was subject to as a building consultant. (*See* Buchanan Dec. 43, Ex. 2). Plaintiff erroneously contends that Mr. Blankenship was subject to a different compensation structure, based upon a <u>draft</u> document that she stole from AHP's confidential personnel records and never discussed or confirmed with anyone at AHP. (*Id.* ¶¶46-51). The stolen document was never fully approved, nor offered to or signed by Mr. Blankenship, and thus, was never placed into effect. (*Id.* ¶¶46-49; Blair Dep., 249:25).

The accurate records and the indisputable evidence in this case demonstrate that, other than a brief transition period (similar to what Ms. Blair received when she was first hired as a Building Consultant), Mr. Blankenship was subject to the standard compensation terms for the Building Consultant position. (Buchanan Dec. ¶¶43-45). Plaintiff has since been provided with the correct records, yet she still refuses to withdraw this frivolous claim.

Even assuming, *arguendo*, that Ms. Blair could establish a *prima facie* case under the EPA, her claim further fails as a matter of law because any alleged pay disparity was justified. Under the EPA, pay disparities are permitted under any of the following four statutory exceptions: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Corning Glass Works*, 417 U.S. at 196.

AHP sales positions are commission-based positions, which measure earnings by quantity of production/sales. (Buchanan Dec., ¶19). Accordingly, overall earnings are directly

proportional to sales performance. (*See id*.) Every Building Consultant (regardless of sex, age, or any other protected classification) is given the option to choose either: (1) a base salary of $30,000 plus $1,500 commission per sale; or (2) $2,500 commission per sale with no base salary, plus $500 upon completion of the home. (*Id*. ¶17). Ms. Blair opted for the first plan and her overall earnings were dependent upon the number of sales she closed. (*Id*. ¶18; Blair Dep., 155:1-14, 228:8-11). Ms. Blair had every opportunity to earn more money by closing more deals and obtaining more commissions. (Buchanan Dec., ¶52). In fact, there have been plenty of successful Building Consultants and sales managers at AHP who are female, some of whom earn well over $100,000 annually under the same compensation structure. (*Id*.) Depending upon Ms. Blair's sales performance, she could earn more than Mr. Blankenship or sometimes less.

For instance, during pay periods in March, April, September, October, and November of 2017, Ms. Blair received payments that exceeded those of Mr. Blankenship. (*Id*. ¶53, Exs. 4-5). On the pay dates of 3/31/17, 4/28/17, 9/15/17, 10/13/17, and 11/10/17, Ms. Blair earned $4,153.85, $4,153.85, $4,903.85, $4,153.85, and $5,653.85, respectively, while Mr. Blankenship earned his set temporary fixed rate of $3,846.15 each pay period, with no entitlement to commissions. (*Id*.)

Conversely, when Ms. Blair's performance efforts declined, her sales numbers and commissions also declined. For example, during the period of November 2017 through April 2018, Ms. Blair closed only a total of three deals (one in November 2017, one in December, zero in January, one in February, zero in March, and zero in April 2018), which is well below the

Case 1:18-cv-00902-RLJ-SKL Document 29-1 Filed 03/20/20 Page 22 of 26 PageID #: 625

expected average of two closings per month. (*Id*. ¶54).[6] This drastic decline in sales performance was the direct result of her declining efforts. (*Id*. ¶56). As comparison, during the first ten months after Ms. Blair returned to the Building Consultant position in 2016, until filing her Charge of Discrimination in August 2017, her lead call volume averaged approximately 356 calls per month. (*Id*.) During the seven months after that point, through February of 2018, Ms. Blair's call volume averaged only approximately 84 calls per month – over a 400% decrease. (*Id*.)[7]

Furthermore, to the extent Ms. Blair's EPA claim is based upon the 13 pay periods of new-hire, non-commissioned transition pay that Mr. Blankenship received, any temporary pay differential during that period was also legitimate because it was based on a factor other than sex. "As noted by many courts, the [EPA's fourth] factor-other-than-sex exemption is broad," intended not to disrupt bona fide legitimate business decisions based on non-gender factors. *Boaz v. Fed. Exp. Corp.*, 107 F. Supp. 3d 861, 885 (W.D. Tenn. 2015), aff'd sub nom. *Boaz v. FedEx Customer Info. Servs., Inc.*, 668 F. App'x 152 (6th Cir. 2016). In this case, as with any newly-hired sales employee, AHP provided Mr. Blankenship a temporary base salary for the purpose of allowing him time to build a lead base and to protect other AHP sales employees in the same region (such as Ms. Blair) from the potential "cannibalizing" of leads. (Buchanan Dec., ¶20). During that period, Mr. Blankenship was not entitled to commissions. (*Id*. ¶¶22 and 44).

---

[6] Ms. Blair's decline in performance during this period cannot be explained by any competition with Mr. Blankenship because, in November of 2017, Mr. Blankenship moved away from Chattanooga, relocating to another AHP office in Georgia, and Ms. Blair was once again the only sales employee in the Chattanooga office during that time period. (*Id*. ¶55).

[7] In fact, during the months of August and November 2017, Ms. Blair made only 44 calls each month, and only 14 calls in December 2017. (*Id*.)

This is a legitimate business purpose, which Ms. Blair likewise received and agrees can be helpful during the new-hire transition for sales employees. (*See* Blair Dep., 107:23-108:11; and 189:5-7). "Under the Equal Pay Act, the courts and administrative agencies are not permitted to substitute their judgment for the judgment of the employer," so long as the employer does not discriminate based on sex. *Washington Cty. v. Gunther*, 452 U.S. 161, 170–71, 101 S. Ct. 2242, 2248–49 (1981).

Therefore, Defendants are entitled to summary judgment on Plaintiff's EPA claim, as well as their reasonable attorneys' fees and costs for having to defend this meritless claim.

### E. __Plaintiff Cannot Prove Any Damages.__

Finally, Plaintiff's claims should be dismissed because there is no evidence of damages in this case. Mr. Blair does not dispute that when Mr. Blankenship was hired, she retained her same job title, duties, and compensation, with no change or loss. (Blair Dep., 227:12-20). She testified that "after I filed my EEOC claim, I continued to be the BC. I continued to do my job every single day." (*Id.*, 307:23-25). As such, Ms. Blair "can't put a finger on anything" concerning damages arising out of her claims in this lawsuit.[8] (*Id.*, 307:22). Additionally, despite claims for emotional distress damages, Plaintiff admittedly has no mental, emotional, anxiety, or psychiatric problems, and has no need for treatment of any such conditions. (*Id.*, 9:24-10:17).

---

[8] The basis of this lawsuit is that AHP "brought in a sales manager and [Plaintiff] was not even offered the position . . . ." (*Id.*, 123:4-6).

# V. **CONCLUSION**

For the foregoing reasons, AHP respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims against AHP in their entirety with prejudice, and order such other and further relief in favor of AHP as the Court deems just and proper.

Respectfully submitted this the 20th day of March, 2020.

<div style="margin-left: 40%;">

*/s/ Jeffrey J. Costolnick*
Gregory J. Hare
Georgia Bar No. 326020
Jeffrey J. Costolnick (Pro Hac Vice)
Georgia Bar No. 637168
OGLETREE DEAKINS NASH
   SMOAK & STEWART, P.C.
One Ninety One Peachtree Tower
191 Peachtree Street, N.E., Suite 4800
Atlanta, Georgia 30303
Telephone: (404) 881-1300
greg.hare@ogletreedeakins.com
jeffrey.costolnick@ogletreedeakins.com

*Attorneys for Defendant America's Home Place, Inc.*

</div>

-24-


Case 1:18-cv-00902-RLJ-SKL Document 29-1 Filed 03/20/20 Page 25 of 26 PageID #: 192

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

| | | |
|---|---|---|
| LYNDI BLAIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C/A No. 1:18-CV-302 |
| | ) | |
| AMERICA'S HOME PLACE, INC., | ) | JURY DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is to certify that on March 20, 2020, the foregoing **Memorandum in Support of**

**Defendant America's Home Place, Inc.'s Motion for Summary Judgment** was filed

electronically with the Clerk of the Court to be served by operation of the Court's electronic

filing system upon the following:

Valerie W. Epstein
EPSTEIN LAW FIRM, PLLC
724 Cherry St.
Chattanooga, TN 37402
vepstein@epsteinlawfirm.net


*/s/ Jeffrey J. Costolnick*
Jeffrey J. Costolnick
(admitted Pro Hac Vice)

-25-