UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| LYNDI BLAIR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-CV-302 |
| ) | |
| AMERICA'S HOME PLACE, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

This matter is before the Court on Defendant's motion for summary judgment [doc. 29]. Plaintiff has responded [doc. 39], and Defendant has replied [doc. 43]. This matter is now ripe for the Court's review. For the reasons stated below, Defendant's motion for summary judgment [doc. 29] will be granted in part and denied in part.

### I. BACKGROUND

In November 2018, Plaintiff filed the instant matter in the Chancery Court of Hamilton County, and it was removed to this Court in December 2018. [Doc. 1]. In her initial complaint, Plaintiff, a female, alleged that, in 2017, while employed by Defendant America's Home Place, Inc, ("AHP"), she was informed that Jim Blankenship, a male, would be her new boss and the Sales Manager for the Chattanooga area. [Doc. 1-2 at 9]. Plaintiff contends that Blankenship, who was 39 years old at the time, was significantly younger than her, because she was 61 years old at the time. She asserts that she was not offered the Sales Manager position despite having been at the Chattanooga location for

many years. She further asserts that she later learned that Blankenship was paid a higher base salary and commissions. [*Id.*]. Plaintiff contends that she complained to management about this, but nothing was done to rectify the situation. [*Id.* at 10]. She further states that she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 3, 2017, alleging discrimination under the Age Discrimination in Employment Act ("ADEA"), the Equal Pay Act ("EPA"), and Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff now raises claims for violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.*, the ADEA, 29 U.S.C. § 621, *et seq.*, the EPA, 29 U.S.C. § 209(d), *et seq.*, and Title VII, 42 U.S.C. § 2000e, *et seq.* [*Id.*].

AHP is a scattered-lot home builder that specializes in On-Your-Lot custom home building. [Doc. 29-3 at 2]. In July 2005, AHP hired Plaintiff as a Building Consultant, the title AHP uses for its sales representatives, in its Chattanooga office. [Doc. 29-2 at 58-59; Doc. 29-3 at 2]. The primary duties of Building Consultants is to pursue and cultivate sales leads in AHP's database by calling, emailing, and otherwise communicating with potential customers. [Doc. 29-3 at 2]. By September 2006, Plaintiff voluntarily asked to step down from the commission-based Building Consultant role into an hourly-based, non-production, office assistant role, with the title of "Production Coordinator." [Doc. 29-3 at 2; Doc. 39-4 at 1]. Plaintiff remained in the Production Coordinator role until August 2013, when she moved into the role of Sales Administrator, which involved assisting the sales team with administrative matters. [Doc. 29-3 at 2]. In August 2016, Plaintiff asked to return to the role of Building Consultant, and AHP agreed. [*Id.* at 3].

In 2016, when Plaintiff resumed the position of Building Consultant, all Building Consultants had the choice of two established compensations plans: (1) a "base plus commission" plan, where the employee was paid a base salary of $30,000 plus $1,500 commission per sale closed; or (2) a "commission only" plan, where the employee was paid $2,500 per sale plus $500 upon the completion of the home, with no base salary. [Doc. 29-2 at 106; Doc. 29-3 at 3]. Plaintiff opted for the "base plus commission" compensation plan. [Doc. 29-3 at 3].[1] However, to attract new sales candidates and prevent the cannibalizing of existing leads from other AHP sales employees, AHP offers newly-hired sales employees, or employees new to a region, the option of a temporary, fixed base salary, without commission, during the first 13 pay periods of the new sales role. [*Id.*]. Plaintiff received a similar benefit when she was first hired as a Building Consultant. [Doc. 29-2 at 108-09; Doc. 29-3 at 3-4; Doc. 39-4 at 1].

In June 2017, AHP hired Jim Blankenship away from Schumacher Homes, another scattered-lot home building company that AHP considered one of its chief competitors. [Doc. 29-3 at 4]. AHP considers the scattered-lot home business to be a "unique market" with a "small sub-set of competing companies." AHP considers sales production experience in this unique field to be rare, and believes that, without prior experience, the learning curve for new Building Consultants is long and difficult. Accordingly, AHP considers the acquisition of a proven sales producer from Schumacher a "rare and

---

[1] Plaintiff claims that she did not know that she had the option to stay on the commission only plan, but states that she would have selected the base plus commission plan anyway. [Doc. 29-2 at 106-08].

high-potential employment opportunity." [*Id*.]. Prior to hiring Blankenship, AHP received information that Blankenship was a proven "Top 10" sales performer at Schumacher. [Doc. 29-2 at 209; Doc. 39-3 at 4]. Based on this information, AHP sought to recruit Blankenship. [Doc. 29-3 at 5]. At the time, the Chattanooga office had enough sales leads to support a second salesperson. During the recruitment process, Blankenship specifically requested the title of "Sales Manager." [*Id*.]. At that time, AHP did not have a Sales Manager position in the Chattanooga office, and it was not a position that AHP was seeking to fill. [Doc. 29-2 at 221; Doc. 29-3 at 5]. AHP's Chattanooga office had not employed a Sales Manager since 2014. [Doc. 29-3 at 5; Doc. 39-4 at 2]. Nevertheless, to entice Blankenship to move to AHP, the company agreed to give him the title of Sales Manager. [Doc. 29-3 at 5].

Plaintiff never asked for the title of Sales Manager, and Plaintiff testified that employees are not given a job at AHP without requesting or applying for it. [Doc. 29-2 at 67, 221; Doc. 29-3 at 5]. During her time with AHP, there was never an open position that Plaintiff applied for and did not receive. [Doc. 29-2 at 116].

AHP contends that Blankenship's hiring did not affect Plaintiff's compensation or role with AHP in any way. [Doc. 29-3 at 6]. However, Plaintiff contends that Blankenship was given every other lead that came into the Chattanooga office, reducing the number of leads that she could make sales on to receive a commission, and thereby, reducing her compensation. [Doc. 39-4 at 4]. AHP agrees that the company's leads are automatically distributed evenly among all sales personnel in an office. [Doc. 29-3 at 5]. Plaintiff's job title was unchanged and she maintained the same duties as before Blankenship's hire.

4

[Doc. 29-2 at 228; Doc. 29-3 at 6]. AHP contends that Blankenship had no supervisory duties over Plaintiff, but Plaintiff contends that Blankenship told her that he was her boss. [Doc. 29-2 at 114-15].

AHP also contends that Blankenship received no superior compensation to any other Building Consultant, despite the Sales Manager title. [Doc. 29-3 at 6]. Plaintiff, however, contends that Blankenship received a salary of $50,000 for a six-month period, plus $2,000 commission per home, higher than her salary of $30,000 annually plus $1,500 commission per home. [Doc. 29-3 at 3; Doc. 39-4 at 2]. AHP contends that, because Blankenship was hired from outside of the company and coming into a new region, he was offered a temporary transition base-salary at a rate of $3,846.15 for the first 13 pay period of his employment with no production or sales-related commissions. [Doc. 29-3 at 6, 24, 26]. Plaintiff, however, contends that Blankenship was paid commission during this transition phase, stating that Blankenship "threw a fit" when AHP accidentally paid Plaintiff a commission that Blankenship believed he should have received. [Doc. 39-4 at 4]. Plaintiff also bases her conclusion that Blankenship was paid both a higher base salary and commissions during this transition phase on a "Request for Personnel Action Form" that she obtained from Blankenship's personnel file, and attached to her complaint as "Exhibit B." [Doc. 1-2 at 13; Doc. 29-3 at 6]. That document indicated that Blankenship was to receive a base salary of $50,000 for the first 6 months, plus $2,000 commission per house, a $3,000 moving bonus, and monthly auto and phone allowances of $500 and $75 respectively. [Doc. 1-2 at 13]. AHP contends that this document is a draft, and was never fully approved by AHP corporate or presented to or signed by Blankenship, nor

5

implemented or activated as payment terms through AHP's employee payroll system. [Doc. 29-2 at 250-51; Doc. 29-3 at 6-7]. AHP contends that the "Request for Personnel Action Form" that was finalized and ultimately placed into effect was the June 22, 2017, document that states that Blankenship's compensation during the transition period would be "$3,846.15 for 13 Pay Periods. Guaranteed," and nothing else. [Doc. 29-3 at 7]. In November 2017, Blankenship left the Chattanooga office and moved to another AHP office in Georgia, and, as a result, again received the temporary transition pay rate. [Doc. 29-3 at 8; Doc. 39-9].

## II. STANDARD OF REVIEW

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion[.]" Fed. R. Civ. P. 56(c)(1). This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Additionally, a party may "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to

6

present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Moreover, mere conclusory and unsupported allegations, rooted in speculation, are insufficient to meet this burden. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

To defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id*. at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id*. at 251-52.

### III.    ANALYSIS

As an initial matter, Defendant argues that, with respect to both her sex and age discrimination claims, Plaintiff has presented no direct evidence, and thus, the *McDonnell Douglas*[2] burden shifting analysis applies. [Doc. 29-1 at 12-13]. Defendant also contends that the same standard applies under both Title VII and the THRA. [*Id*. at 13, n. 3]. Plaintiff's response appears to agree with these points. Accordingly, the Court will proceed with its analysis of Plaintiff's claims under the *McDonnell Douglas* standard.

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

When a plaintiff's claim of discrimination is based on circumstantial evidence, as here, courts apply the *McDonnell Douglas* burden shifting framework. *McClain v. Nw. Community Corr. Center Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006). Under this burden-shifting framework, Plaintiff first bears the burden of establishing a *prima facie* case of disparate treatment. *White v. Columbus Metro. Housing Authority*, 429 F.3d 232, 240 (6th Cir. 2005). Once Plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, non-discriminatory explanation for its actions. *Seay v. Tenn. Valley Authority*, 339 F.3d 454, 463 (6th Cir. 2003). Finally, after the defendant articulates a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to demonstrate that the employer's explanation is pretext. *McDonnell Douglas*, 411 U.S. at 802-04, 807.

### A. Failure to Promote

Defendant contends that Plaintiff cannot establish a *prima facie* case for failure to promote because: (1) Plaintiff cannot demonstrate any difference between the positions, besides the title; and (2) Plaintiff cannot show that she ever applied for and/or was considered for the position of Sales Manager. [Doc. 29-1 at 14]. Defendant contends that no exception based on Plaintiff's lack of awareness of the position applies because: (1) Sales Manager was not an open position that Defendant was looking to fill; and (2) Plaintiff never expressed any interest in the Sales Manager title, despite being aware of it. [*Id*. at 15]. Further, Defendant contends that the evidence shows that the decision to hire Blankenship had nothing to do with Plaintiff, and instead, was based on Blankenship's

8

prior experience in a niche industry, working for a competitor, and his status as a Top 10 salesperson for the competitor. [*Id*. at 19].

Plaintiff argues that, because Defendant failed to ask for applications for the Sales Manager position, she does not have to prove that she applied for and was qualified for a promotion or that she was considered for and denied the promotion. [Doc. 39 at 4]. She contends that, had she been aware of the Sales Manager position she would have applied for it. She also argues that she was otherwise qualified for the position. [*Id*.].

Defendant replies that Plaintiff testified that she knew that her predecessor, Bob Hamilton, had the title of Sales Manager, and had obtained that title on his own initiative, so if Plaintiff really wanted the title, she would have followed his lead and requested it. [Doc. 43 at 6]. Defendant also notes that prestige is subjective, and Plaintiff has cited no authority indicating that prestige can serve as an actionable basis for discrimination. [*Id*. at 3]. Defendant also contends that, regardless of how well an office is performing, there is always room for improvement, and the Chattanooga office had enough sales leads to support a second salesperson. [*Id*. at 12].

Before the Court addresses whether Plaintiff has established a *prima facie* case of age or sex discrimination based on failure to promote, the Court must determine whether the position that Plaintiff did not receive was actually a "promotion." "It is well-established in the Sixth Circuit that 'where an employee wants to transfer to a new position within the same organization, the court requires the employee to show that the transfer would have been a promotion. *Tolliver v. Children's Home-Chambliss Shelter*, 784 F. Supp. 2d 893, 903 (E.D. Tenn. 2011) (quoting *Moore v. City of Columbus*, 129 F. App'x 978, 981 (6th

9

Cir. 2005)) (internal alternations omitted). Plaintiff can meet this burden by showing that the desired position would have provided an increased salary, significantly different responsibilities, a "more distinguished" title, or additional benefits. *Id.* (quoting *Moore*, 129 F. App'x at 981-82). However, "a plaintiff's subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action." *Id.* (quoting *Mitchell*, 389 F.3d at 189) (internal alternation omitted).

Here, Plaintiff insists that the Sales Manager position was a promotion over her position of Building Consultant. Yet the evidence indicates that there was no significant difference between the two positions beyond their labels. Plaintiff herself admits that there was no difference in the job duties associated with her position and the Sales Manager position filled by Blankenship. Further, as discussed in more detail below, there was no significant pay difference between the positions. While Plaintiff points to alleged prestige of the Sales Manager title, prestige is subjective and is insufficient to establish that the Sales Manager position was a promotion over Plaintiff's Building Consultant position. Accordingly, for this reason alone, Defendant is entitled to summary judgment on Plaintiff's failure to promote claim. Nevertheless, for the sake of completeness, the Court will address whether Plaintiff has established a *prima facie* case of age or sex discrimination based on the failure to promote, even if the Sales Manager position could be deemed a promotion.

To establish a *prima facie* case for failure to promote, a plaintiff must show that (1) she is a member of a protected class; (2) she applied for and was qualified for a

10

promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job. *Tolliver*, 784 F. Supp. 2d at 902 (citing *White*, 429 F.3d at 240). The Sixth Circuit has held that, in certain situations, a formal application is not necessary in order to establish a *prima facie* claim of discrimination. *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989). Of relevance, the Court stated that, if an employer promotes employees without asking for applications or posting the opening, "the application requirement of the prima facie case is loosened somewhat. In this situation, the plaintiff can establish the application element of a prima facie case by showing that, had she known of an . . . opening, she would have applied." *Id.* at 146 (quoting *Box v. A&P Tea Co.*, 772 F.2d 1272 (7th Cir. 1985)) (internal quotation marks omitted). For an employee to show that she would have applied for a position if she had been aware of it, she must establish that she has shown more than a mere general interest in the position. *Id.*

There is no dispute that Plaintiff has met the first element of a *prima facie* case as to both her age and sex discrimination claims. Plaintiff is a female who was, at the time of the alleged failure to promote, over the age of 40. *See* 42 U.S.C. § 2000e-2(a)(1) (setting forth protected classes, including sex); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003) (stating that, in age discrimination cases, the protected class includes all workers at least 40 years old).

As to the second and third elements of the *prima facie* case, Plaintiff asserts that she need not show that she applied and was considered for the position, because Defendant did not post the Sales Manager position. Even assuming that the *Wanger* standard applies,

11

Plaintiff has not met her burden of showing that she would have applied for the Sales Manager position had she known about it. Although Plaintiff now states that, if she had known of the Sales Manager position, she would have applied, she offers no evidence that she ever displayed more than a "general interest" in the title of Sales Manager. In fact, the only evidence that Plaintiff ever showed a modicum of interest in the title is her testimony that she asked one of her predecessors in the sales department, Bob Hamilton, why he held the title of Sales Manager, when there was no one but himself to manage, and he responded "that's true . . . but my title is sales manager." [Doc. 29-2 at 56, 60, 112]. Plaintiff later testified that "the only sales manager that had ever been in the office for the 13 years I had been there was Bob Hamilton and he just gave himself that title." [*Id.* at 221]. Despite her knowledge of the title, that one of her predecessors held the title, and that he obtained the title on his own initiative, Plaintiff never expressed to management that she had any interest in the title. Plaintiff's self-serving statement that she would have applied for the Sales Manager position is simply insufficient under *Wanger*. Thus, even assuming that, rather than the second and third factors, Plaintiff need only meet the less demanding *Wanger* standard, Plaintiff has not established this element of *prima facie* case of age or sex discrimination for failure to promote.

Because the Court has concluded that Plaintiff has not established the second and third elements of her *prima facie* case, under any standard, the Court need not address whether Plaintiff has established the fourth element. Plaintiff has not met her burden of establishing a *prima facie* case of discrimination for failure to promote her to the position

12

of Sales Manager, and for this reason, summary judgment will be **GRANTED** in Defendant's favor on this claim, and this claim will be **DISMISSED**.

### B. Disparate Pay

As to Plaintiff's disparate pay claim, Defendant argues that Plaintiff's claims are contradictory, because, if Sales Manager is a more senior role, then the roles cannot be comparable for purposes of an equal pay claim. [Doc. 29-1 at 20-21]. Nevertheless, Defendant argues that the evidence shows that Blankenship was subject to the same compensation structure as Plaintiff for Building Consultants. [*Id*. at 21]. As to the temporary transition pay, Defendant argues that this pay difference was based on a factor other than sex, namely, the company's policy to help build lead base and prevent cannibalizing of leads for new hires. [*Id*. at 23].

Plaintiff responds that she and Blankenship had the same responsibilities, but Blankenship was paid more. [Doc. 39 at 10]. Plaintiff states that Blankenship received a higher base pay and commission, longer temporary pay, and phone and auto allowances. [*Id*. at 5]. Plaintiff finally contends that there are genuine questions as to whether the "draft" of Blankenship's pay agreement was really a draft. [*Id*. at 9].

Defendant replies that overwhelming evidence disproves Plaintiff's theory, which is based on a draft document. [Doc. 43 at 4]. Defendant notes that Blankenship's pay records clearly show consistent bi-weekly payments with no commission. [*Id*.]. With regard to the additional temporary salary Blankenship received when he relocated to another office, Defendant contends that this was consistent with the company's legitimate policy of providing this benefit to new sales employees in a region. [*Id*. at 6].

13

The legal analysis governing disparate pay claims under the EPA and Title VII is essentially the same. *Tolliver*, 784 F. Supp. 2d at 903-04. To establish a *prima facie* case of disparate pay, the plaintiff must show that the employer "pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Id*. at 904 (quoting *Vehar v. Cole Nat'l Group, Inc*., 251 F. App's 993, 998 (6th Cir. 2007)). "Whether a job is substantially equal for purposes of the EPA is determined on a case-by-case basis and 'resolved by an overall comparison of the work, not its individual segments.'" *Beck-Wilson v. Principi*, 441 F.3d 353, 359-60 (6th Cir. 2006) (quoting *Odomes v. Nucare, Inc*., 653 F.2d 246, 250 (6th Cir. 1981)).

One the plaintiff has established a *prima facie* case, the burden shifts to the defendant to prove that the wage differential is justified under one of four affirmative defenses: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Tolliver*, 784 F. Supp. 2d at 904 (citing *Bentin v. Breathitt Cnty. Bd. Of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998)). The defendant must demonstrate that there are no genuine issues as to whether the pay differential is due to a factor other than sex. *Id*. Thus, the plaintiff can survive summary judgment even without setting forth evidence from which the jury could infer that the employer's proffered reason is pretextual. *Id*.

Despite Plaintiff's reliance on the document that she obtained from Blankenship's employee file, which Defendant asserts is a draft document, there is no *genuine* issue of material fact as to what Blankenship was actually paid, as Defendant's pay statements for

14

Blankenship are before the Court. After his first pro-rated pay period, with a gross pay of $1,923.10, Blankenship received a gross pay of $3,846.15 for each of the two-week pay periods from July 3, 2017 to October 22, 2017. [Doc. 29-3 at 31]. The pay records indicate that Blankenship's total gross pay for this time frame was $36,538.45. This actual pay is consistent with the June 22, 2017, request for personnel action form, signed by Blankenship and the general manager, which Defendant contends is the finalized form. [Doc. 29-2 at 377]. Accordingly, Plaintiff's reliance on the alleged draft document, which states other payment terms, does not create any genuine issue of material fact that is relevant to the issue before the Court.

The Court will assume, without deciding, that Plaintiff has established a *prima facie* case of disparate pay based on Blankenship's gross pay of $3,846.15 per pay period, compared to Plaintiff's gross pay of $1,153.85 per pay period, before commission. [Doc. 29-3 at 29] (dividing $30,000 yearly base pay by 26 pay periods).[3] This pay disparity is clearly based on a reason other than sex or age. Defendant allows all new sales employees brought in from outside the company or from other regions, to opt for a temporary, fixed base salary without commission during the first 13 pay periods at the new AHP location. [Doc. 29-3 at 3]. This policy is based on the company's recognition that it takes new sales employees some time to build a lead base in a new region and start earning reasonable commissions, and the policy helps attract new sales candidates and prevent the

---

[3] Notably, whether Plaintiff has established a *prima facie* case is questionable at best, since she admits that she also received a temporary base pay when she first took the position of Building Consultant.

15

cannibalizing of existing leads from other AHP sales employees in the same region. [*Id*.]. Plaintiff has presented no evidence disputing this valid business purpose, and indeed, admits that she received the same benefit the first time she was hired as a Building Consultant, and it helped her transition as a new sales employee. [Doc. 29-2 at 108-09]. Likewise, any extension of this temporary base pay, after Blankenship moved to another sales region, was equally legitimate for the same purposes. Accordingly, there is no genuine issue of material fact with regard to Plaintiff's claim of disparate pay based on Blankenship's receipt of the temporary base pay, and Defendant's motion for summary judgment will be **GRANTED** as to this portion of the disparate pay claim.

However, to the extent that Plaintiff seeks to raise a claim of disparate pay based on Blankenship's receipt of phone and automobile allowances, the Court cannot say at this juncture that no genuine issue of material fact exists. The Court notes that Blankenship's pay records indicate that he received these benefits, while Plaintiff's pay records indicate that she did not. [Doc. 29-3 at 28-31]. Notably, the term "wages" for purposes of the EPA means all forms of payment or compensation, including any benefits or payments not included as part of regular wages. *Kenzle v. General Motors, LLC*, 903 F. Supp. 2d 532, 544 (E.D. Mich. 2012) (citing 29 C.F.R. § 1620.10). Defendant failed to address this issue in its motion for summary judgment or reply brief. Thus, the Court cannot determine whether this disparity in the payment of automobile and cell phone allowances was based on factors other than age or sex. Accordingly, a genuine issue of material fact exists as to this portion of Plaintiff's disparate pay claim, and Defendant's motion for summary judgment will be **DENIED** as to this portion of the claim. However, because the Court has

16

concluded that no genuine issue of material fact exists with regard to the remainder of the claim, for the sake of judicial economy, the Court will allow Defendant to file a renewed motion for summary judgment on this limited issue.

### C. Alleged Discrimination After Blankenship's Hire

Finally, Defendant argues that, if Plaintiff is alleging that Blankenship took some of her sales responsibilities, such does not constitute replacement. [Doc. 29-1 at 16]. Defendant argues that Blankenship did not take any leads that Plaintiff was actively working on, and, at most, accidentally assisted two customers Plaintiff had previously communicated with, one of whom did not purchase from AHP. [*Id*. at 16-17].

Plaintiff responds that she was demoted to the position of office manager after filing her EEOC complaint. [Doc. 39 at 7]. Plaintiff also states that other examples of sex discrimination at AHP are Sharon Chase and Kim Wilson, both of whom interviewed, but not hired, for building consultant positions. Plaintiff states that she was told that a woman could not be hired for the building consultant position. [*Id*.]. Further, Plaintiff asserts that Blankenship was given half of her leads, which was an adverse employment action. [*Id*. at 6].

First, to the extent that Plaintiff seeks to assert that any retaliation claim exists based on her alleged demotion and firing after filing her EEOC claim, Plaintiff previously sought to amend her complaint to add retaliation claims based on these events, which the Court denied, finding that Plaintiff's delay in seeking to amend her complaint with these claims would prejudice Defendant and appeared to be for a dilatory purposes. [Doc. 38].

17

Accordingly, Plaintiff's argument regarding her demotion and firing are irrelevant to the claims before the Court, and the Court will not address that issue.

Second, to the extent that Plaintiff seeks to assert any claim for sex discrimination on the ground that other females were not hiring for the Building Consultant position, Plaintiff cannot maintain any failure-to-hire claim for the Building Consultant position, because Plaintiff, a female, was in fact hired as a Building Consultant. Plaintiff lacks any standing to bring such a claim on behalf of Chase or Wilson, and any evidence regarding Chase and Wilson's applications for Building Consultant positions is entirely irrelevant to any claim actually before the Court in this case.

Finally, to the extent that Plaintiff asserts that being forced to share her sales leads with Blankenship was an adverse employment action on which she can base a claim of sex or age discrimination, such is insufficient to constitute an "adverse employment action" under Title VII. An adverse employment action has been defined as "a materially adverse change in the terms and conditions of a plaintiff's employment." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004)) (internal quotation marks and alterations omitted). An adverse employment action is typically marked by a "significant change in employment status" such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quoting *White*, 364 F.3d at 798) (internal quotation marks omitted). Here, despite her contention that she was forced to split her leads with Blankenship, Plaintiff admits that Blankenship only interacted with two sales leads she had previously had contact with, one of which did not

18

result in a sale. Moreover, under Plaintiff's theory that this could constitute an adverse employment action, AHP would have been precluded from hiring any other sales employees in the Chattanooga office, unless they fell within all of the same protected classes as Plaintiff, which defies the intent of Title VII. Accordingly, based on the evidence presented, the Court finds that the sharing of leads was not a significant enough change to constitute an adverse employment action under Title VII.

Nevertheless, even if such could constitute an adverse employment action, and Plaintiff has otherwise established a *prima facie* claim of sex or age discrimination, Defendant has offered a legitimate, non-discriminatory reason for the sharing of leads, namely, that the Chattanooga office had enough leads to support two sales employees. Plaintiff's only response to this appears to be her assertion that she performed well as the office's only sales employee. However, regardless of Plaintiff's performance, if there were sufficient leads for two sales employees in the Chattanooga office, it is a legitimate business judgment to determine that more sales would be generated by two sales employees. Plaintiff has presented no evidence that there were not sufficient leads in the Chattanooga office to support two sales employees, or any other evidence that this legitimate business reason for hiring an additional sales person to handle the office's leads is pretextual. Accordingly, no genuine issue of material fact exists as to this claim, and Defendant's motion for summary judgment will be **GRANTED** on this claim.

## IV. CONLUSION

For the reasons stated above, Defendant's motion for summary judgment [doc. 29] will be **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** in all

19

respects, and all claims are **DISMISSED** with the exception of Plaintiff's disparate pay claim based on automobile and cell phone allowances.  The Court **GRANTS** leave to file a renewed motion for summary judgment on this sole remaining issue.  Defendant **SHALL** file such renewed motion no later than **FOURTEEN (14)** days from the date of this order.  An order consistent with this memorandum opinion will follow.

s/ Leon Jordan  
United States District Judge